**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 13-10034-CR-MARTINEZ/SNOW

**UNITED STATES OF AMERICA,**

Plaintiff,

vs.

**FRED DAVIS CLARK**,

______Defendant.
______________________________/

**DEFENDANT'S MOTION FOR RECUSAL OF DISTRICT COURT JUDGE**

Defendant, **FRED DAVIS CLARK,** through counsel, and pursuant to 28 USC §§ 144 and 455(a), hereby requests that this Court enter an Order of Recusal, and further requests that the Clerk of Court reassign this case, and as grounds, states the following:

1. Defendant Fred Clark is scheduled to be sentenced on February 22, 2016, after conviction for numerous counts in the Second Superseding Indictment.

2. Defendant Fred Clark is still pending trial on the Second Superseding Indictment, Counts 8 through 11, which pertain to fraud allegations for a foreign entity, CMZ. These counts were severed from the trial, by agreement of the parties.

3. Defendant Fred Clark has finished reviewing the transcript of his trial testimony in this matter, which occurred on December 3-4, 2015. Portions of this transcript are referenced in Defendant's Rule 33 Motion for New Trial, as grounds for a new trial. [DE 479, filed 1/11/16, and pending]. Those portions of the transcript clearly indicate that during Defendant's testimony, the district court made comments in the

presence of the jury, and during side bars, and during other occasions when the jury was not present, that reasonably and fairly show that the district court was not fair toward Defendant (or a perception of unfairness or bias), and/or that the district court favored the Government in this trial.[1]

4. On January 11, 2016, the Government also filed a Motion for Forfeiture, after the parties agreed to a non-jury hearing on the forfeiture issues. [DE 480 ]. Attached to that motion was a proposed order. [DE480-11]. The Court gave the parties until January 11, 2016 to file these post-trial motions. No order was entered directing Defendant to respond to the Motion for Forfeiture. That motion was to be determined after briefing by the parties.

5. On January 27, 2016, before Defendant could file a response to the Motion for Forfeiture [DE480], this Court entered an Order of Forfeiture [ DE488], adopting the Government's proposed order. Defendant had yet not filed a Response, and thereafter requested permission to file a response. The Government agreed to a response being filed by February 2, 2016, [DE 492], and such a response was indeed filed. [DE 495].

6. In the Forfeiture Order, among other things, the Court stated:

"26. ...The Court finds the statement of defendant that he did not transfer funds to Honduras as a means to try to evade the SEC's jurisdiction, to not be credible in light of the other evidence to the contrary, ***defendant's longstanding pattern of behavior and the self-serving statements defendant made during his trial testimony in this***

---

[1] Due to the Defendant being transported from FDC Miami to Key West for sentencing purposes this past week, there was approximately a week delay in Defendant being able to meet in person with counsel, and to also re-review his trial transcripts, which were not transported with him.

> ***case for which the jury clearly found to be not credible*** as evidenced by its verdict." (emphasis added).

The Court therefore commented on the credibility of the Defendant, based on his testimony at trial, and has characterized it as a "long standing pattern of behavior" and "self-serving statements." Again, this statement was made without Defendant being given an opportunity to respond to the Motion for Forfeiture. Any attempt to respond to the Motion for Forfeiture is therefore tainted by these comments and findings, as are any other pending proceedings, including the pending trial on Counts 8 through 11.

7. In addition, in that order, the Court stated:

> "11. Defendant *orchestrated a scheme that fraudulently obtained approximately* ***$303.8 million in proceeds*** from Cay Clubs investors (primarily in the form of bank loans), and this amount forms the basis of the forfeiture as to Counts 2 through 4. In sum, in the instant trial, as in *Hasson*, the government presented extensive evidence of defendant's scheme to defraud, which scheme was assisted by certain specific acts including those for which defendant was convicted at Counts 2 through 4." (emphasis added).

The Court has commented on the conclusions about the scope of relevant conduct for loss calculation purposes. This is a highly contested issue that has yet to be determined at the sentencing hearing, which has not yet taken place. These findings, before sentencing, show clear bias – that a conclusion was made without the benefit of the defense argument.

8. In addition, in that Order the Court stated:

> "21. The Court finds that in October 2010, when defendant was involved in the pawn shops business in the Caribbean, defendant stated to a business partner, Joe Zahn, that after shutting down Cay Clubs and paying $80 million back to investors and lenders, defendant stated that he had taken $2 million dollars from Cay Clubs and come "down to the Caribbean to start his life over again." (Zahn Tr. of 7/20/2015, at 142). Thereafter, defendant implied, he utilized those funds to open and operate CMZ. ***The Court credits this testimony*** and finds that defendant's statement,

> combined with the evidence introduced at trial and referred to above, shows that defendant's Cay Clubs fraud scheme was the source of funds for defendant's financial stake in the CMZ pawn shop business, as part of his effort to "start his life over again." (emphasis added).

The Court has therefore commented on, and credited the testimony of a primary witness (Joe Zahn) relating to criminal allegations that are still pending in this Court. (Second Superseding Indictment, Counts 8 through 11). The Court made further credibility determinations in paragraph 25, relating to a matter still pending before this Court.

9. During the trial in this matter, the following specific examples of comments by the Court justify a recusal motion:

A) There are *numerous* occasions where the court made comments, in front of the jury, about the credibility of Defendant, when he would try to explain his answers to various questions by the Government. The Court initially told Defendant during direct examination: "please answer the questions to the best of your ability" (Clark testimony, 12/3/15, p. 55). Furthermore, on at least a *dozen* occasions, the Court also told Defendant (right after he answered a question) that his answers were not "proper explanations." For example, when the Government objected to a non-responsive answer, the Court commented: "**Yeah, I don't think that is responsive or explanatory**). " (Clark testimony, 12/4/15, p. 12, am session). When Defendant asked if he could explain an answer, the Court commented: **"No. Just answer the questions, otherwise I don't really want Santa Claus to come while we're still in this trial."** (Clark testimony, 12/4/15, p. 24, am session).

B) At a later sidebar, the Court commented: **"I don't think this witness is capable of doing a limited amount of anything . . . I'm going to shut him down." "I'm going to shut him down if he keeps blabbing**. (Clark testimony, 12/3/15, p. 80).

C) In front of the jury, the Court later stated: **"Well, the answer is, as usual, not the least bit responsive to the question."** (Clark testimony, 12/3/15, p 83).

D) After an objection to one of Defendant's answers, the Court commented in front of the jury: "I think it **danced around the answer**, but it gave the answer." (Clark testimony, 12/3/15, p. 129).

E) At another side bar during the second day of testimony (cross examination), the Court commented in response to the Defendant's numerous requests to explain his answers:

> "I don't know what I am supposed to do about it. **Should I use my gavel on the top of his head?** . . . He knows what he is supposed to do. But he is a salesman, and he is attempting to sell to the jury. And that is not right . . . you know, **I don't know what to do about it without appearing to be biased**."

F) During that same sidebar, the Court further stated:

> **"I don't think he's capable of keeping him on track. I don't think anybody is. . . . I don't know how the jury is going to react to it, but I suspect if they follow the Eleventh Circuit pattern jury instructions, this is going to hurt him** . . . I'm going to get harsher because maybe that is what it takes, and I don't want to do that. I've tried to avoid doing it, but I may have to get harsher because he's incorrigible." (Clark testimony, 12/4/15, pp. 34-37, am session).

G) The Court also commented: "I've used my gavel three times in 13 years. I'm going to bring it over and **I'm going to have it next to me because I'm**

**fixing to use it..** And I don't want to do this in front of the jury." (Clark testimony, 12/3/15, p. 31).

H). The Court also commented:
"Be seated. I don't know what to do. I mean, **if your purpose is to goad me into blowing up in front of the jury so you can get a mistrial, you're getting very close.** But I really think I can control myself and I don't think that's going to work." " (Clark testimony, 12/4/15, pg. 68, am session).

10. Based on the totality of the comments made by the Court during Defendant's testimony, and the premature entry of the Order of Forfeiture (including its specific findings on credibility and loss calculations), and based on review of this information by the Defendant, as contained in the attached ***Affidavit of Defendant Fred Clark***, the district court has given the appearance that it cannot be fair, or in fact, has actual bias.

11. Section 455(a) requires disqualification for the appearance of partiality (i.e., when a judge's "impartiality might reasonably be questioned").When Congress amended § 455(a), it made clear that judges should apply an objective standard in determining whether to disqualify. A judge contemplating disqualification under § 455(a), then, should not ask whether he or she believes he or she is capable of impartially presiding over the case. Rather, the question is whether a judge's impartiality might be questioned from the perspective of a reasonable person, and every circuit has adopted some version of the "reasonable person" standard to answer this question. *See, e.g., United States v. DeTemple*, 162 F.3d 279, 286 (4th Cir. 1998), cert. denied, 119 S. Ct. 1793 (1999); In re Hatcher, 150 F.3d 631, 637 (7th Cir.

1998); *Baldwin Hardware Corp. v. Franksu Enter. Corp*., 78 F.3d 550, 557 (Fed. Cir. 1996); *Blanche Rd. Corp. v. Bensalem Twp*., 57 F.3d 253, 266 (3d Cir. 1995); *United States v. Lovaglia*, 954 F.2d 811, 815 (2d Cir. 1992); *Vieux Carre Prop. Owners v. Brown*, 948 F.2d 1436, 1448 (5th Cir. 1991); *Little Rock Sch. Dist. v. Arkansas*, 902 F.2d 1289, 1290 (8th Cir. 1990); *Parker v. Connors Steel Co.*, 855 F.2d 1510, 1524 (11th Cir. 1988).

12. With respect to § 455(a), courts have consistently held that its purpose "'is to promote confidence in the judiciary by avoiding even the appearance of impropriety whenever possible.'" *United States v. Patti*, 337 F.3d 1317, 1321 (11th Cir. 2003) (quoting *Liljeberg v. Health Servs. Acquisition Corp*., 486 U.S. 847, 865, 108 S. Ct. 2194 (1988)). Thus, the standard that appellate courts apply when considering whether recusal was warranted "'is whether an objective, disinterested lay observer fully informed of the facts underlying the grounds on which recusal was sought would entertain a significant doubt about the judge's impartiality.'" *Id.* (quoting *Parker v. Connors Steel Co.*, 855 F.2d 1510, 1524 (11th Cir. 1988))

13. **<u>Certificate of Good Faith as required by 28 USC § 144 :</u>** The undersigned counsel, Valentin Rodriguez, Jr., certifies that, after having reviewed: 1) the transcript of Defendant's trial testimony from both days, 2) the comments therein made by the district court (as more fully outlined in the Motion for New Trial [DE479] and herein, and 3) the Order of Forfeiture [DE488] (which made particular findings on sentencing issues, and the credibility of

witnesses in a pending criminal trial without response from the defense), that this motion is filed in good faith, and has been filed after consultation with Defendant Fred D. Clark, who also believes in good faith of the validity of the motion, and appearance of bias and/or actual bias.

**WHEREFORE**, based on the foregoing, Defendant respectfully requests that this Court enter an Order of Recusal pursuant to 28 USC §§ 144 and/or 455(a), forthwith, for all matters pending, including sentencing, the motion for forfeiture, and the trial on Counts 8 through 11.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true copy of the foregoing Motion to Recuse has been furnished all counsel of record by filing with CM/ECF on this 2nd of February, 2016.

Respectfully submitted,

*Valentin Rodriguez*

**VALENTIN RODRIGUEZ, ESQ.**
Valentin Rodriguez, P.A.
120 S. Dixie Highway, Suite 204
West Palm Beach, FL 33401
(561) 832-7510
Fla. Bar No. 047661
defend@bellsouth.net

Counsel for Defendant Fred D. Clark